MONTEREY LIFE SYSTEMS, INC., a
Delaware Corporation

v.

The UNITED STATES.

No. 440–78.

United States Court of Claims.

Aug. 13, 1980.

Arthur R. Chenen, Los Angeles, Cal., atty. of record, for plaintiff. Steven Gourley, Jessica L. Darraby, Aviva M. Bergman, and Memel, Jacobs, Pierno & Gersh, Los Angeles, Cal., of counsel.

Glenn E. Harris, New York City, with whom was Asst. Atty. Gen. Alice Daniel, Washington, D.C., for defendant. Diane Moskal, Philadelphia, Pa., of counsel.

Before SKELTON, Senior Judge, and NICHOLS and SMITH, Judges.

## ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS–MOTION FOR SUMMARY JUDGMENT

SKELTON, Senior Judge.

This case comes before the court on cross–motions for summary judgment. The plaintiff in this action is Monterey Life Systems, Inc., a Delaware corporation (hereinafter referred to as Monterey Life), which owns 100% of the outstanding stock in nine health care facilities which provide medical services to Medicare beneficiaries. Monterey Life challenges the government's refusal to reimburse Monterey Life under the Medicare Act, 42 U.S.C. §§ 1395 *et seq.*, for a reasonable return on equity capital invested after Monterey Life had acquired 100% of the stock of the nine ongoing medicare facilities. The parties present the following issues for our review: (1) Since Monterey Life acquired 100% of the stock instead of the assets of ongoing medical facilities which provide medical services to Medicare beneficiaries, is Monterey Life entitled to Medicare reimbursement based upon a return of equity capital invested (including goodwill) and a step–up in basis for depreciation of the assets? (2) Was defendant's action and the Board's decision in refusing reimbursement arbitrary, capricious, unreasonable and contrary to the Medicare Act? (3) Is defendant collaterally estopped from relitigating Monterey Life's entitlement to Medicare reimbursement? (4) Has Monterey Life failed to exhaust its administrative remedies? (5) Does Monterey Life have standing to bring this lawsuit?

## I. STATUTORY BACKGROUND

The case arises under Title XVIII of the Social Security Act, as amended, 42 U.S.C. §§ 1395 *et seq.*, which is commonly known as the Medicare Act (hereinafter referred to as the Act). Congress enacted this program in 1965 to establish the federally funded health insurance program known as Medicare. This Act, which provides for federal reimbursement of medical care for the aged and certain disabled persons, consists of two principal components. Part A (the program involved in the instant case) provides hospital insurance benefits to the elderly (42 U.S.C. §§ 1395–1395i-2) and Part B concerns a voluntary supplemental medical insurance program, (42 U.S.C. §§ 1395j–1395w). Coverage under Part A extends to the "reasonable costs" of covered services rendered to beneficiaries by "providers" as defined in 42 U.S.C. § 1395x(u). This definition of "providers" includes hospitals and skilled nursing facilities like those whose stock is owned by Monterey Life.

Before a qualified provider may participate in the Medicare program, the Act requires that the provider file an agreement with the Secretary of Health, Education and Welfare in which it agrees, among other things, not to bill patients eligible under the Medicare program for covered services. 42 U.S.C. § 1395cc. In turn, the Act provides that the provider is to be reimbursed by the government for its reasonable cost of providing such services, or if lower, the customary charges for such services. 42 U.S.C. § 1395f(b).

The court in *American Medical International, Inc. v. Secretary of Health, Education and Welfare*, 466 F.Supp. 605, 609–610 (D.D.C. 1979), thoroughly examined the Medicare reimbursement program and we refer to a portion of that examination as follows:

"A provider may be reimbursed for services rendered to Medicare beneficiaries directly by the Secretary, or it may appoint as a 'fiscal intermediary' any qualified public or private agency to act as the Secretary's agent for the purpose of reviewing its claims and administering payments due it from the government. If a provider is dissatisfied with the fiscal intermediary's determination with respect to its claim for cost, it may request a hearing on this matter before the Provider Reimbursement Review Board. 42 U.S.C. § 1395oo. The Board's determination is the final agency action unless the Secretary, on his own motion and within 60 days after the provider of services is notified of the Board's decision, reverses or modifies the Board's decision. 42 U.S.C. § 1395oo (f)(1). The Secretary has delegated his authority to review the Board's decisions to the Administrator of the Health Care Financing Administration.

"The Medicare program is structured around the concept of reasonable cost. Under that concept, a provider is to be reimbursed only for the reasonable cost of providing medical services to Medicare beneficiaries. The Medicare statute sets forth only the broadest definitional parameters, requiring reasonable cost to be '. . . . the cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services . . .'. 42 U.S.C. § 1395x(v)(1)(A). Beyond this threshold requirement, reasonable cost is to be determined under regulations promulgated by the Secretary '. . . establishing the method or methods to be used, and the items to be included, in determining such costs . . .'. Id. These regulations must, however, take into account the direct and indirect costs necessary in the efficient delivery of covered services to Medicare beneficiaries so that such costs will not be borne by non–covered individuals. Conversely, the cost of rendering services to non–covered individuals is not to be borne by the Medicare Insurance Program.

"Pursuant to his statutory authority, the Secretary has promulgated regulations to reimburse providers for their reasonable costs incurred in rendering medical services to Medicare beneficiaries. 42 C.F.R. §§ 405.401–488."

In this case, based on its acquisition of the stock of the Medicare provider facilities, Monterey Life is seeking reimbursement for the following items under the Secretary's regulations: (1) A return on equity capital invested and used in the provision of patient care (including goodwill). 42 C.F.R. § 405.429; (2) cost related to patient care. 42 C.F.R. § 405.451; and (3) depreciation on the fair market value of the assets of each provider as of the date of acquisition of the provider's stock by Monterey Life. 42 C.F.R. § 405.415.

## II. FACTS

During the period from approximately July 1, 1968, to April 24, 1969, Monterey Life acquired 100% of the outstanding stock of nine health care facilities in exchange for cash and notes or in exchange for the stock of Monterey Life at a guaranteed price. At the time of acquisition by Monterey Life, each facility was providing medical services to Medicare beneficiaries and was a party to a provider agreement with the Secretary. Monterey Life has no such agreement with the Secretary. On July 1, 1968, Monterey Life purchased 100% of the capital stock of Monterey Nursing Inn, Inc. (hereinafter referred to as Nursing Inn), a provider participating in the Medicare program.[1] Immediately after this stock acquisition, Monterey Life commenced to exercise exclusive control over the management of the newly

---

1. We consider Monterey Life's claim only as it relates to Nursing Inn, because Nursing Inn is the only provider owned by Monterey Life which pursued its mandatory administrative remedy in the manner prescribed. See, Ulman v. United States, 214 Ct.Cl. 308, 558 F.2d 1 (1977); Goldstein v. United States, 201 Ct.Cl. 888, cert. denied, 414 U.S. 974, 94 S.Ct. 287, 38 L.Ed.2d 217 (1973); Weinreb v. United Medical Service, Inc., 392 F.Supp. 45, 47 (S.D.N.Y. 1975).

acquired facility including using Nursing Inn's assets in any manner Monterey Life deemed proper, including, but not limited to, the provision of Medicare services to Medicare beneficiaries. Nursing Inn, however, was not liquidated and there is no evidence in the record that at the time of the stock acquisition Monterey Life had ever intended to acquire Nursing Inn's assets at some point in the future.[2] Based upon this stock acquisition, Monterey Life then claimed that the ownership of Nursing Inn's corporate assets had effectively changed. Thus, it contended that the excess of the stock purchase price over the book value of the assets should be included on the cost report when calculating depreciation and a return on equity capital. After Nationwide Mutual Insurance Co., the fiscal intermediary, reviewed the cost report for the fiscal year ending June 30, 1969, it disallowed the claim for increased reimbursement based upon the stock acquisition for depreciation and a return on equity capital in the amount of $27,179. Monterey Life appealed this disallowance to the intermediary's Provider Appeal Board (hereinafter referred to as the Board), which was established pursuant to Nursing Inn's provider agreement with the Secretary. On February 15, 1974, a pre-hearing conference was held at which the composition of the Board was disclosed to Monterey Life. Three members of the Board were employees of the intermediary, and two members were selected by the intermediary from the Ohio Nursing Home Association. No panel member had any previous involvement with the intermediary's initial determination, and Monterey Life made no objection to this arrangement. After a hearing held on March 19, 1974, the Board unanimously affirmed the disallowance on June 24, 1974. The Board's decision rejected Monterey Life's contention that by its acquisition of 100% of the stock in Nursing Inn, it had also effectively acquired the corporate assets of Nursing Inn. It held that the mere acquisition of stock did not effectuate a change in ownership of the assets which is a prerequisite under the Act and regulations to reimbursing Monterey Life for the costs claimed. It ruled that the recovery of depreciation and a return on equity capital may be based only upon corporate assets owned by the provider, as opposed to mere stock ownership in some other corporation, which in turn owns the assets. Since the physical assets and equity capital of the provider Nursing Inn remained unchanged, the Board rejected the claim of the stock owner, Monterey Life. Monterey Life then moved to reopen the decision, and such motion was denied. Thereafter, Monterey Life initiated this action.

There is a serious question whether Monterey Life is the real party in interest so as to enable it to bring this lawsuit. However, we find it unnecessary to decide that question because we think that on the merits it clearly cannot recover.

### III. DECISION OF THE BOARD

This court's review of the decision of the Provider Appeal Board is limited. The standard for such a review was established in our decision in *Goldstein v. United States*, 201 Ct.Cl. 888, 889–890, *cert. denied*, 414 U.S. 974, 94 S.Ct. 287, 38 L.Ed.2d 217 (1973), where we stated:

"2. As for the year 1967, the court holds that it is precluded by 42 U.S.C. § 1395 ff. and § 405(h) from reviewing or overturning the determination of the Provider Appeals Committee except insofar as such determination (a) may have involved or rested upon procedures which were constitutionally invalid or violative of the governing statute, or (b) may have substantially violated the Due Process Clause of the Fifth Amendment or the provisions of the governing statute. See *Schroeder Nursing Care, Inc. v. Mutual of Omaha Ins. Co.*, 311 F.Supp. 405 (E.D.

---

**2.** We note that the Provider Appeal Board found that Nursing Inn's assets were eventually conveyed to Monterey Life on November 24, 1970, two years and five months after Monterey Life acquired all of Nursing Inn's stock.

Monterey Life, however, apparently attaches no special significance to this event since it does not base its claim upon such transfer and since it hardly mentions such transfer in its briefs.

Wisc., 1970); *San Vincente Hospital v. Travellers Ins. Co.*, C.D.Calif., No. 71-2453–FW, August 10, 1972; *Rothman v. Hospital Service of Southern California*, C.D.Calif., No. 68–1325–JWC, April 19, 1972; *Aquavella v. Richardson*, 437 F.2d 397 (2d Cir. 1971); *Coral Gables Convalescent Home, Inc. v. Richardson*, 340 F.Supp. 646 (S.D.Fla., 1972); *St. Jude Manor Nursing Home, Inc. v. Richardson*, M.D.Fla., No. 72–681–Civ.–J–S, Oct. 3, 1972. With respect to these two types of claim, the court has jurisdiction under 28 U.S.C. § 1491 and the finality provisions of the medicare legislation do not bar judicial review."

*See Whitecliff, Inc. v. United States*, 210 Ct.Cl. 53, 536 F.2d 347 (1976), *cert. denied*, 430 U.S. 969, 97 S.Ct. 1652, 52 L.Ed.2d 361 (1977). With this standard of review in mind, we turn to the Board's decision which denied Monterey Life's claims for reimbursement.

As indicated earlier, it was Monterey Life's contention before the Board that its acquisition of 100% of the stock of Nursing Inn entitled it to certain Medicare reimbursements (i. e., a return on equity capital invested including goodwill and a step up in basis for the assets of Nursing Inn based on their fair market value as of the date of acquisition for depreciation purposes.) The Board denied Monterey Life's claim holding that the acquisition by Monterey Life of all of Nursing Inn's stock did *not* entitle Monterey Life to claim that it had acquired all of Nursing Inn's assets. We agree with the Board's decision. It is an elementary principle of corporate law that a corporation and its stockholders are separate entities and that the title to the corporate property is vested in the corporation and *not* in the owner of the corporate stock. *Moline Properties, Inc. v. Commissioner*, 319 U.S. 436, 63 S.Ct. 1132, 87 L.Ed. 1499 (1943); *see* 18 Am.Jur.2d *Corporations* § 486 and the cases cited therein; *see also Algonac Mfg. Co. v. United States*, 192 Ct.Cl. 649, 662, 428 F.2d 1241 (1970). Therefore, when Monterey Life acquired the stock in Nursing Inn, it did not become the owner of Nursing Inn's assets. If we were to ignore the separate corporate existence of Nursing Inn as Monterey Life would have us do, we could just as easily ignore the corporate existence of Monterey Life and consider its stockholders as the real parties in interest. In that event, we would have no case before us. However, that is not our decision.

The Act and the regulations authorized by it do not allow Medicare reimbursement for the acquisition of stock. Title 42 U.S.C. § 1395x(v)(1)(B) provides that the regulations "shall include provision for specific recognition of a reasonable return on equity capital, including necessary working capital, *invested in the facility and used in the furnishing of such services. . . .*" (Emphasis supplied). A fair reading of this provision indicates that the Act contemplates investments in a medical facility which is *used to furnish medical services*. It is difficult to see how a stock investment could be used for such a purpose. The pertinent regulation, 42 C.F.R. § 405.429, provides that a reasonable return on equity capital invested and used in the provision of patient care is allowable for Medicare reimbursement purposes. Subsection (b) of the regulation states that in computing the allowable return, a provider's equity capital means the "provider's investment in plant, property, and equipment related to patient care" and "net working capital maintained for necessary and proper operation of patient care activities." There is no mention of stock. Therefore, if a provider wants Medicare reimbursement for equity capital invested under this regulation, it must purchase tangible assets, like equipment and other property, to be used for providing patient care. The purchase of stock, on the other hand, is primarily and ordinarily for investment purposes and is not used to provide patient care.

Monterey Life likewise could not receive Medicare reimbursement for depreciation for two reasons. First, the basis to calculate depreciation is the historical cost incurred by the owner in acquiring the asset. 42 C.F.R. § 405.415(a)(2), (b)(1). Monterey Life never acquired any assets in its

acquisition of Nursing Inn stock. Second, to be an allowable reimbursable expense, depreciation must be identifiable and recorded in the *provider's* accounting records. 42 C.F.R. § 405.415(a)(1). Monterey Life's accounting records do not and could not reflect a depreciation schedule of the assets of a Medicare provider, as it was not itself such a provider.

■■■ The final reason why Monterey Life cannot recover Medicare reimbursement is that it does not have an agreement with the Secretary to provide Medicare services as required by the Act. 42 U.S.C. § 1395cc provides, in pertinent part, as follows:

> "(a)(1) Any provider of services ... shall be qualified to participate under this subchapter and shall be eligible for payments under this subchapter *if it files* with the Secretary an agreement...." (Emphasis supplied).

Therefore, since Monterey Life does not have an agreement with the Secretary, it is not eligible to receive Medicare reimbursement payments and, consequently, its claim for such payments has no basis and is without merit. *See American Medical International, Inc. v. Secretary of H.E.W.,* 466 F.Supp. at 622. In this regard, Monterey Life, in its opposition brief to defendant's cross–motion for summary judgment, has moved pursuant to rule 61(a) of this court to amend its petition to name its wholly owned Medicare provider corporations (including Nursing Inn) as plaintiffs. Besides the fact that this motion is untimely filed, the joinder of such corporations in this action would be a totally useless act and would not change the inevitable result reached in this decision. Such corporations have *not* "actually incurred" the expense of the stock purchase mentioned in this action for which Monterey Life is seeking Medicare reimbursement. Since such corporations have not incurred the expense upon which this Medicare reimbursement case is based, their joinder in this suit is unnecessary because they, as Medicare providers, cannot recover any expenses not "actually incurred" by them. 42 U.S.C. § 1395x(v)

(1)(A). Furthermore, none of these corporations, except Nursing Inn, have exhausted their administrative remedies. Therefore, they have nothing to present to this court for review. Monterey Life's motion is, therefore, denied.

## IV. COLLATERAL ESTOPPEL

Monterey Life contends that the government is collaterally estopped from relitigating the issue of Monterey Life's entitlement to Medicare reimbursement. In support of this contention, Monterey Life cites *Homan & Crimen v. Califano,* No. EP–75–CA–265 (W.D.Tex., Aug. 31, 1978), CCH Medicare & Medicaid Guide ¶ 29,213 and *Pacific Coast Medical Enterprises v. Harris,* 633 F.2d 123 (9th Cir. 1980), as cases where the issue involved in the instant case was decided against the government. We cannot agree with Monterey Life's contention.

■■■ The fundamental principle of collateral estoppel and its related doctrine of res judicata was recognized early in *Southern Pacific R. Co. v. United States,* 168 U.S. 1, 48·49, 18 S.Ct. 18, 27–28, 42 L.Ed. 355 (1897) where the court said:

> "The general principle announced in numerous cases is that a right, question, or fact distinctly put in issue and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies; and even if the second suit is for a different cause of action, the right, question, or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified."

Under this announcement of the rule, mutuality of the parties would be required before the doctrine could be applied. *See, e. g., Bigelow v. Old Dominion Copper Mining·& Smelting Co.,* 225 U.S. 111, 127, 32 S.Ct. 641, 642, 56 L.Ed. 1009 (1912). If this were still the rule, defendant would clearly not be collaterally estopped because the parties in this case and in the ones cited by Monterey Life are not the same and it is

not contended that they are in privity. But that, however, is no longer the current view in cases involving the issue of collateral estoppel. Now mutuality of parties is no longer required, *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979), and "once an issue is actually. and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party [against whom the issue was resolved] to the prior litigation." *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 974, 59 L.Ed.2d 210 (1979). It is apparent, therefore, that both the prior and subsequent litigations need only have one party in common for this principle to apply. The court in *Parklane* did, however, limit somewhat the offensive use of collateral estoppel and these limitations would, of course, apply to Monterey Life's use of this principle. We need not discuss these limitations on the offensive use of collateral estoppel, though, since we find that the issue involved in this case, i. e., Monterey Life's entitlement to Medicare reimbursement, is *not* the same as the issues decided in *Homan & Crimen v. Califano, supra*, and *Pacific Coast Medical Enterprises v. Harris, supra*. We note that at first glance these cases appear to be similar to the one before us because they both involve the purchase of 100% of the stock of a Medicare provider facility. However, the other controlling facts in those cases are very different from the one in the instant case. Thus, because of these factual differences, the issues are definitely not the same and defendant is not collaterally estopped by the decisions of those two courts.

In *Pacific Coast*, the plaintiff seeking Medicare reimbursement was a Medicare provider (i. e., it had a contract with the Secretary to provide services to Medicare beneficiaries). The plaintiff purchased 100% of the stock of another corporate Medicare provider and nine months later liquidated that corporation. The plaintiff then sought to receive the same elements of Medicare reimbursement that Monterey Life is seeking, treating the two–step transaction as a purchase of assets. The Secre-

tary ruled that the transaction was not a purchase of assets thereby denying the plaintiff any Medicare reimbursement. The District Court reversed the Secretary's decision and the Ninth Circuit affirmed. In deciding that the stock acquisition and the later liquidation were, in effect, a purchase of assets, and that the plaintiff was entitled to Medicare reimbursement, the court relied heavily on the following facts: (1) The plaintiff was a Medicare provider; (2) very little time elapsed between the stock acquisition and the corporate liquidation; (3) after the stock acquisition, the plaintiff exercised control over the management of the acquired corporation; (4) it was always the intent of the plaintiff to acquire the assets of the liquidated corporation and the stock acquisition was just a preliminary step to the dissolution of the corporation; (5) the two step acquisition was followed for tax planning purposes and to avoid an acceleration provision in a mortgage on the property of the liquidated corporation; (6) the transaction was a bona fide, arms–length purchase; (7) in denying the plaintiff's claim for reimbursement, the Secretary relied on regulations (i. e., 42 C.F.R. §§ 405.-626(c) and 405.427(c)(2)) which the court found to be inapplicable "to the acquisition process for valuation of assets and reimbursement purposes" and to be inappropriate when the transaction was viewed as a single acquisition. It is apparent, therefore, that the controlling facts in *Pacific Coast* are not present in the case now before us and that Monterey Life's reliance on that case is misplaced.

The facts in *Homan & Crimen* are admittedly very similar to the facts in the instant case. However, in that case the government relied on 42 C.F.R. § 405.426 which deals only with provider agreements and *not* with items allowable for Medicare reimbursement purposes. Also, it is unclear from the court's opinion whether the plaintiff had a provider agreement with the Secretary or if the acquired corporation (which did have a provider agreement) was a party to the lawsuit. It does appear, however, that these issues were never raised. Inas-

much as these controlling issues do not appear to have been considered by the court, that case provides little support for Monterey Life's argument in the case now before us. Therefore, we find that defendant is not collaterally estopped by the two above cited cases to litigate Monterey Life's entitlement to Medicare reimbursement in this case.

Accordingly, based on the foregoing, we hold that Monterey Life is not entitled to Medicare reimbursement under the facts presented in this case. Therefore, Monterey Life's motion for summary judgment is denied and the government's cross-motion for summary judgment is granted and Monterey Life's petition is dismissed.