BALDWIN PARK COMMUNITY
HOSPITAL et al.

v.

The UNITED STATES.

GARDEN PARK GENERAL HOSPITAL,
a California corporation, et al.

v.

The UNITED STATES.

Nos. 518–79C, 567–79C.

United States Claims Court.

Jan. 25, 1984.

---

Thomas H. Brock, Washington, D.C., for plaintiffs; Edgar N. James, Washington, D.C., of counsel.

Randall B. Weill, Washington, D.C., with whom was Asst. Atty. Gen. J. Paul McGrath, David M. Cohen, and George M. Beasley, III, Washington, D.C., for defendant.

## OPINION ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

WHITE, Senior Judge.

In these companion cases, which involve common questions of law and which have been consolidated for purposes of disposition, the plaintiffs assert claims against the Government for their alleged costs of capital in connection with the furnishing of health services under the Medicare Program.

On June 28, 1980, while case No. 518–79C was pending before this court's predecessor, the United States Court of Claims, and before the two cases were consolidated, the defendant filed a motion to dismiss the complaint[1] in case No. 518–79C. That motion was denied by the Court of Claims in an order dated September 24, 1982.

The defendant later filed in this court on April 25, 1983, a motion for summary judgment in the consolidated cases. The plaintiffs responded by filing a cross-motion for partial summary judgment on July 11, 1983. The two motions are now before the court.

It is concluded that the cases can be disposed of on the basis of the pending motions, and that the complaints should be dismissed.

### Background Information

Title XVIII of the Social Security Act of 1965 (Pub.L. No. 89–97, 79 Stat. 291 (1965); now found in 42 U.S.C.A. §§ 1395–1395xx (1983)) created what is commonly called the "Medicare Program" to provide health insurance and patient care for the aged and disabled.

The plaintiffs are corporations which operate "provider hospitals," i.e., hospitals participating in the Medicare Program.

The plaintiff Humana, Inc., wholly owns all the other plaintiffs.

These cases involve part A of the Medicare Program (42 U.S.C.A. §§ 1395c–1395i–2 (1983)), which deals with hospital insurance for the aged. Part A is designed to give protection against hospital and post-hospital costs to individuals over age 65. After the payment of a deductible by the beneficiary, the Government provides payment for the "reasonable cost" of services that are reasonable and necessary for the diagnosis or treatment of the illness or injury affecting the beneficiary. See 42 U.S.C.A. §§ 1395c–e and 1395y(a)(1) (1983).

A hospital that wishes to become a provider of services under part A of the Medicare Program agrees with the Secretary of Health and Human Services (formerly the Secretary of Health, Education, and Welfare) that it will not charge eligible patients for items or services that are covered by the Government under the program. 42 U.S.C.A. § 1395cc(a)(1) (1983). The hospital is reimbursed by the Secretary from the Federal Hospital Insurance Trust Fund. 42 U.S.C.A. § 1395i (1983).

Reimbursement to hospitals includes only the "reasonable cost" of services delivered to beneficiaries insured under the Medicare Program. "Reasonable cost" is defined as " * * * the cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services, and shall be determined in accordance with regulations establishing the method or methods to be used, and the items to be included, in determining such costs * * *." 42 U.S.C.A. § 1395x(v)(1)(A) (1983). The Secretary has the authority to promulgate these regulations. A restriction on the Secretary's regulatory powers, though, is a prohibition against the adoption of reimbursement methods that cause the cost of care supplied to Medicare patients to be borne by individuals not covered by the Medicare Program. 42 U.S.C.A. § 1395x(v)(1)(A) (1983).

It is provided in 42 U.S.C.A. § 1395x(v)(1)(B) (1983) that a reasonable

---

1. Denominated a petition under the rules of the Court of Claims.

rate of return on equity capital must be paid to proprietary hospitals. This section, however, does not contain a formula for determining such rate. The Secretary, therefore, promulgated a regulation stating that the allowable annual rate of return on equity capital " * * * is determined by applying to the provider's equity capital a percentage equal to one and one-half times the average of the rates of interest on special issues of public debt obligations issued to the Federal Hospital Insurance Trust Fund for each of the months during the provider's reporting period or portion thereof covered under the program." 42 C.F.R. § 405.429 (1982).

The plaintiffs challenge the Secretary's regulation establishing a formula for determining the reasonable rate of return on equity capital for proprietary hospitals, such as those operated by the plaintiffs. The plaintiffs contend that this regulation (quoted in the preceding paragraph) established an unreasonably low rate of return on equity capital for the 1968 through 1972 fiscal years, in violation of the statutory mandate that provider hospitals be reimbursed for the reasonable cost of services delivered to beneficiaries under the Medicare Program.

The plaintiffs submitted various claims for reimbursement under the Medicare Program during the cost reporting years of 1968 through 1972. In accordance with 42 C.F.R. § 405.429 (1982), the Government calculated the return on equity capital owed plaintiffs, in order to determine the final amount of Medicare reimbursement due plaintiffs for the pertinent fiscal years.

The plaintiffs do not contend that the rate of return specified in 42 C.F.R. § 405.-429 (1982) was incorrectly applied by the Government, or that the actual amount of the reimbursement was incorrect, based on such rate. The plaintiffs filed the actions in the United States Court of Claims (this court's predecessor) on the ground that the Secretary's rate of return on equity capital is unreasonably low. The plaintiffs assert that, because of this formula, they must charge non-Medicare patients amounts suf-ficient to cover the unreimbursed costs of providing services to Medicare patients, in order to generate a reasonable return on equity capital for their overall operations. This, however, is in violation of 42 U.S.C.A. § 1395x(v)(1)(A) (1983). Therefore, the plaintiffs seek reimbursement for what they allege is their actual cost of equity capital, and a determination that the Secretary's formula violates the Medicare Act because it prohibits reimbursement of reasonable costs by limiting the rate of return on equity capital and because the effect of the formula is that costs of providing services to Medicare eligibles are being borne by individuals not covered by the Medicare Program.

As a first line of defense, the Government asserts that these actions are barred by the doctrine of collateral estoppel because, previously, the United States District Court for the District of Columbia, in *Humana, Inc. v. Schweiker,* Nos. 75–0302, 78–0175, 78–0584, 81–0853, and 81–1311 (D.D.C. Aug. 19, 1982), decided the very same issue adversely to identical plaintiffs.

### Related Proceeding

The case of *Humana, Inc. v. Schweiker,* relied on by the defendant, was prosecuted by Humana, Inc., and a number—but not all—of the other plaintiffs that are parties of the two pending cases. *Humana, Inc.,* involved the cost reporting years 1973 through 1977. The complainants in *Humana, Inc.,* contended that the rate of return on equity capital prescribed by the Secretary in 42 C.F.R. § 405.429 was unreasonable.

The district court rejected the contention that the Secretary's formula set out in the regulation was invalid. On the contrary, the court held that the formula prescribed in the regulation provides "an adequate reimbursement for the reasonable cost of attracting capital to the corporation," and explained that the Secretary has "the institutional competence and expertise to make a determination as to the appropriate rate of return" (slip op. at 8–9).

### Collateral Estoppel

If the doctrine of collateral estoppel (sometimes referred to as issue preclusion) is appropriately invoked by the defendant in this instance, its effect will necessarily be the dismissal of the pending cases.

The doctrine of collateral estoppel is usually explained as being to the effect that, once a court of competent jurisdiction has decided an issue of fact or law necessary to its judgment, such determination is conclusive in any subsequent litigation based on a different cause of action and involving a party to the previous case. *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979); *Commissioner v. Sunnen,* 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948); *Southern Pacific R.R. Co. v. United States,* 168 U.S. 1, 48–49, 18 S.Ct. 18, 27, 42 L.Ed. 355 (1897); *Edgar v. United States,* 145 Ct.Cl. 9, 12, 171 F.Supp. 243, 245 (1959); *Department of Natural Resources & Conservation of the State of Montana v. United States,* 1 Cl.Ct. 727, 737 (1983). The rationale for the application of collateral estoppel in appropriate cases is that precluding "parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States, supra,* 440 U.S. at 153–54, 99 S.Ct. at 973–74 (footnote omitted).

Simply stated, a party who has litigated an issue and lost should be bound by that decision because he has already had his day in court.

■ The applicability of collateral estoppel in a particular case depends upon whether certain factors, developed by the courts through many years, are present. *See Montana v. United States, supra; Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979); *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1970); *Commissioner v. Sunnen, supra; Southern Pacific R.R. Co.*

*v. United States, supra; Mother's Restaurant, Inc. v. Mama's Pizza, Inc.,* 723 F.2d 1566 (Fed.Cir.1983); *Department of Natural Resources & Conservation of the State of Montana v. United States, supra.* It is well established that collateral estoppel may properly be invoked by a party if it appears:

(1) that the issue as to which the doctrine is asserted was the same in the previous litigation as in the current litigation;

(2) that the issue was "actually litigated" in the previous case and was necessary and essential to the resulting judgment;

(3) that there have been no significant changes in the facts or in the applicable legal principles since the initial decision;

(4) that all the parties as to whom collateral estoppel is asserted were fully represented in the previous action, either directly or through other parties or privies that have related financial or proprietary interests; and

(5) that there are no special circumstances indicating that the use of collateral estoppel would be inappropriate.

### Discussion

As stated previously, Humana, Inc., and a number of its wholly owned corporations that are plaintiffs in the present case challenged, in *Humana, Inc. v. Schweiker, supra,* the Secretary's formula for the rate of return on equity capital. The validity of the Secretary's regulation was upheld by the district court in that case. The initial problem in the present litigation is to determine whether the plaintiffs are collaterally estopped by the previous decision from contending here that the Secretary's formula is invalid. This question will be considered in relation to the factors outlined in the preceding paragraph.

■ In the first place, the issue which the plaintiffs seek to litigate in this court is the same as the issue previously determined by the District Court for the District of Columbia. In *Humana, Inc.,* the district

court held that the Secretary's regulation establishing the rate of return on equity capital paid under the Medicare Program was not arbitrary, capricious, an abuse of discretion, or otherwise in contravention of law. Slip op. at 17. The plaintiffs' claims in the present cases are based upon the same rate of return provision in 42 C.F.R. § 405.429 (1982). A comparison of the amended complaint in *Humana, Inc.*, with the complaints in the present cases will demonstrate that the plaintiffs merely seek to relitigate the same issue in another forum.

The only distinction in causes of action between the previous litigation and the present actions relates to the fiscal years involved in the claims for relief. *Humana, Inc.*, addressed the cost reporting years 1973 through 1978. The present litigation challenges the Secretary's regulation as it was applied in the years 1968 through 1972. The circumstance that different cost reporting years are involved is deemed to be irrelevant with respect to the matter of identity of issues. The district court decision broadly ruled that the Secretary's regulation was lawful. The court did not limit its ruling merely to a holding, for instance, that the plaintiffs' actual rate of return on equity capital was reasonable for the years 1973 through 1978. Instead, the court held that the formula itself used to calculate the rate of return on equity capital was lawful. This same formula has been applied without change to all the cost reporting years in question here. The identical issue before this court, therefore, has already been decided in *Humana, Inc.*, by a court of competent jurisdiction.

In the second place, it is clear that the issue raised here was "actually litigated" in the district court, because the issue was genuinely disputed and was resolved by the court. In addition, the decision of the court on the issue was necessary for its judgment denying the claims of the complainants in *Humana, Inc.* The purpose of this requirement " * * * is to prevent the incidental or collateral determination of a *non-essential* issue from precluding reconsideration of that issue in later litigation. * * *"

*Mother's Restaurant, Inc. v. Mama's Pizza, Inc., supra*, at 1571. (Emphasis in original.) The alleged invalidity of the Secretary's formula for the rate of return on equity capital was the primary basis on which the complainants sued in the district court (although some other questions were also presented). Consequently, the district court's decision on this point—far from being "non-essential"—really resolved the principal controversy in that litigation.

With respect to the third factor, the plaintiffs do not contend that any legal principle has been altered since the district court decision was rendered. They do maintain that the facts have changed, in that the present cases involve fiscal years different from those that were involved in the district court case. Recent decisions demonstrate, however, that differences in facts render collateral estoppel inapplicable only if they are of controlling significance. *See Montana v. United States, supra*, 440 U.S. at 158, 99 S.Ct. at 976; *Department of Natural Resources & Conservation of the State of Montana v. United States, supra*, 1 Cl.Ct. at 739–40; *accord Monterey Life Systems, Inc. v. United States*, 225 Ct.Cl. 50, 61–62, 635 F.2d 821, 827 (1980). Because the only factual distinction between *Humana, Inc.*, and the present cases relates to the cost reporting years involved, and the particular fiscal years were not relevant to the district court's decision, the factual difference relied on by the plaintiffs is not significant enough to bar the use of collateral estoppel.

As to the fourth factor, the plaintiffs call attention to the circumstance that some of the plaintiffs in the present litigation were not parties to *Humana, Inc.* Thus, according to the plaintiffs, some of them have not had their day in court. This contention cannot be accepted as valid. Although some of our plaintiffs were not actually named as plaintiffs in the district court case, their interests were represented fully by *Humana, Inc.* That company, at the time involved in *Humana, Inc.*, owned all the plaintiffs in the present litigation. *Montana v. United States, supra*, establish-

es that even nonparties to earlier litigation can be subject to collateral estoppel if their financial or proprietary interests were represented in the previous case (440 U.S. at 154–55, 99 S.Ct. at 974). The Court stated as follows (*id.* at 154, 99 S.Ct. at 974):

\* \* \* [T]he persons for whose benefit and at whose direction a cause of action is litigated cannot be said to be "strangers to the cause. . . . [O]ne who prosecutes or defends a suit in the name of another to establish and protect his own right, or who assists in the prosecution or defense of an action in aid of some interest of his own . . . is as much bound . . . as he would be if he had been a party to the record." \* \* \* [The material within quotation marks is quoted from *Souffront v. La Compagnie des Sucreries,* 217 U.S. 475, 486–87, 30 S.Ct. 608, 612–13, 54 L.Ed. 846 (1910).]

As Humana, Inc., owned all the other plaintiffs in our cases and was a named plaintiff in the district court case, it cannot be doubted that all the plaintiffs in our cases had their "day in court" and were not "strangers to the cause" in the other litigation.

The last factor to be considered is whether any special circumstances are present that would make it inappropriate to apply collateral estoppel in the present cases, such as unfairness or inadequacy of the district court's procedures or a sharp disagreement among courts on the issue under consideration. No such problems, or any other similar ones, have been shown to exist.

As a district court in Tennessee recently stated in a similar case:

Plaintiffs voluntarily chose to litigate this issue in the District Court for the District of Columbia. They lost. The doctrine of collateral estoppel acts to bar the relitigation of this issue as far as these parties are concerned. [*Humana, Inc. and Humana of Tennessee, Inc. v. Schweiker,* No. 82–3416 (M.D.Tenn. May 19, 1983), slip op. at 9.]

Accordingly, the doctrine of collateral estoppel prevents the plaintiffs from relitigating in this court the same issue that they previously litigated in the District Court for the District of Columbia concerning the alleged unlawfulness of the formula prescribed by the Secretary in 42 C.F.R. § 405.429 (1982) for determining the rate of return on equity capital.

*Conclusion*

For the reasons stated in the opinion, and on the basis of the materials submitted to the court, the court concludes that there is no genuine issue as to any material fact necessary for the disposition of these cases, and that the defendant is entitled to a judgment as a matter of law.

The defendant's motion for summary judgment is therefore granted, and the plaintiff's cross-motion for partial summary judgment is denied.

The complaints will be dismissed.

IT IS SO ORDERED.