**ALEXANDER HOSPITAL, INC. et al.**

v.

**The UNITED STATES.**

No. 345–81C.

United States Claims Court.

March 30, 1984.

Michael H. Cook, Washington, D.C., for plaintiffs. Dennis M. Barry, Michael J. Manfredi, and Wood, Lucksinger & Epstein, Washington, D.C., of counsel.

Lorraine B. Halloway, Washington, D.C., with whom was Acting Asst. Atty. Gen. Richard K. Willard, Washington, D.C., for defendant.

## MEMORANDUM OF DECISION

HARKINS, Judge.

Plaintiffs' petition (now complaint) was filed in the United States Court of Claims on May 26, 1981, to recover unreimbursed costs for supplying health care services under Part A of the Medicare Program (Hospital Insurance Benefits for the Aged and Disabled). 42 U.S.C. §§ 1395c—1395i-2 (1983). Plaintiffs' case was transferred to this court pursuant to section 403(d) of the Federal Courts Improvement Act of 1982. 28 U.S.C.A. § 171 note (1983). The case is before the court on cross-motions for summary judgment, and oral argument was heard on July 27, 1983. For the reasons that follow, plaintiffs' motion for summary judgment is allowed and defendant's motion is denied.

Defendant filed a motion to dismiss on June 15, 1982, based on the contention that the United States Court of Claims lacked jurisdiction under the Tucker Act by reason of the decision in *United States v. Erika, Inc.*, 456 U.S. 201, 102 S.Ct. 1650, 72 L.Ed.2d 12 (1982). At argument, defendant stated that the motion to dismiss was not being pressed in this case.

The material facts are not in controversy. The 40 plaintiffs listed in the complaint include American Medical International, Inc. (AMI), and 39 hospitals, which are wholly owned, either directly by AMI or by its wholly owned subsidiary American Medical (Central), Inc. AMI is a publicly traded corporation and is one of the largest hospital chain organizations in the United States that provide Medicare health care services. At all times relevant, each plaintiff except AMI was a hospital provider of services pursuant to a contract with the Secretary of the Department of Health, Education and Welfare (HEW) (redesignated in 1980 as the Department of Health and Human Services (HHS)). 42 U.S.C. §§ 1395cc(a)(1), 1395x(e), 1395x(v) (1983).

Plaintiffs' claims are for reimbursement of stock maintenance costs incurred during fiscal years 1969 through 1973. Stock maintenance costs include: (1) accounting costs relating to Securities and Exchange Commission (SEC) filings; (2) other SEC filing costs; (3) stock transfer fees; (4) stock exchange regulation fees; and (5) expenses relating to the accounting and legal expenses of compilation of annual reports, confirming share holders meetings and proxy costs. The stock maintenance costs for plaintiffs in this case are claimed to total $1,097,818 for fiscal years 1969–73. The administrative record is not clear on this point and this decision is limited to the issue of whether the costs claimed are allowable.

This case is an incident in the protracted battle between publicly traded chain hospital organizations and the HEW and HHS as to the reimbursability of stock maintenance costs. This ongoing dispute has resulted in conflicting decisions by the former United States Court of Claims on the

one hand, and the United States Courts of Appeals for the District of Columbia Circuit and the Fifth Circuit on the other. The various cases have involved differing accounting years, and a time span that includes procedural changes in administrative appeals and judicial review of provider reimbursement claims for account periods ending on and after June 30, 1973.

The Medicare Act did not provide a formal administrative review of provider reimbursement claims arising on or prior to June 30, 1973, claims such as are involved in this case. The regulations, however, require the "fiscal intermediary" to provide a review hearing where the amount in controversy exceeds $1,000. 42 C.F.R. § 405.-1809. Disallowances by plaintiffs' fiscal intermediary were appealed to a Hearing Officer, who is an employee of the fiscal intermediary that made the adjustment (42 C.F.R. § 405.1811) and then to a "Special Review Officer" in the Health Care Financing Administration (HCFA) on behalf of the Secretary. The decision of the HCFA constitutes the Secretary's final administrative action for purposes of judicial review. For claims arising after June 30, 1973, appeals from the determinations of a fiscal intermediary are to the Provider Reimbursement Review Board (PRRB), if the amount in controversy is at least $10,000. Judicial review of decisions of the PRRB is obtained through an appeal to the district court in which the provider is located or in the District Court for the District of Columbia. 42 U.S.C. § 1395oo (1983); 42 C.F.R. §§ 405.1835 et seq.

It is not necessary to elaborate on the various rights and responsibilities of providers of Medicare services. For a general discussion of the Medicare Program *see: Whitecliff, Inc. v. United States,* 210 Ct.Cl. 53, 536 F.2d 347 (1976), *cert. denied,* 430 U.S. 969, 97 S.Ct. 1652, 52 L.Ed.2d 361 (1977); *St. Elizabeth Hosp. v. United States,* 214 Ct.Cl. 322, 558 F.2d 8 (1977); *American Med. Int'l., Inc. v. Sec. of H.E.W.,* 466 F.Supp. 605 (D.D.C.1979); *Sun Towers, Inc. v. Heckler,* 725 F.2d 315 (5th Cir.1984).

The substantive issues involved in reimbursability of stock maintenance costs have been examined in detail by the courts involved. On May 17, 1978, the Court of Claims in *AMI–Chanco, Inc. v. United States,* 217 Ct.Cl. 76, 576 F.2d 320 (1978) determined that the stock maintenance costs for fiscal years 1969, 1970 and 1971, were reimbursable under the Medicare Program. *AMI-Chanco* involved 20 hospital participants in the Medicare Program, and the ruling for fiscal years 1969–71 in that case applies to 20 plaintiffs in the instant case.

In *AMI–Chanco,* the Court of Claims decided that the two sections of the Provider Reimbursement Manual (PRM), sections 2134.9 and 2150.2B which had been adopted in 1973, were arbitrary, capricious, not in accordance with law, and afforded no rational basis for disallowance of the claimed costs. 576 F.2d at 322. These sections had been applied by the fiscal intermediary and the HCFA to exclude stock maintenance costs from reimbursement. HEW was found to have acted arbitrarily in adopting and enforcing these provisions because they were not consistent with the basic objectives of the enabling legislation and other Medicare regulations. Stock maintenance costs, also, were found not to be incurred solely for the benefit of investors, but were costs legally required to be incurred in order to attract equity capital. Stock maintenance costs were designated indirect costs of serving Medicare patients. PRM §§ 2134.9 and 2150.2B were held to be inconsistent with other Medicare regulations which permit reimbursement for costs similar to, or generally inclusive of, the costs defined as stock maintenance costs, *i.e.* general administrative and accounting costs, costs of corporate organization, costs of annual meetings and reports when incurred by nonprofit corporations, costs of attracting equity capital, and costs of corporate financing. The Court of Claims took cognizance of the case law restricting judicial intervention in agency action, acknowledged that the administrative interpretation of a statute is entitled to great weight, and that Congress granted the Sec-

retary broad discretion to formulate regulations under the Act. Notwithstanding these established principles, however, the Court of Claims concluded that it could not uphold the decision on stock maintenance costs because the agency decision was "inconsistent with the statutory purpose and other regulations" and followed the principle that an agency construction of the statute need be confirmed only "if it has a reasonable basis in law," *citing Volkswagenwerk v. Federal Maritime Comm'n,* 390 U.S. 261, 271, 88 S.Ct. 929, 935, 19 L.Ed.2d 1090 (1968). 576 F.2d at 326.

On February 2, 1979, the District Court for the District of Columbia in *American Medical International, Inc. v. Secretary of Health, Education and Welfare,* (466 F.Supp. 605 (1979)) (hereinafter *AMInt'l*) determined that stock maintenance costs for fiscal years June 30, 1973 through November 30, 1975, are not reimbursable under the Medicare Act because they are not reasonable costs necessary for providing patient care. The decision in *AMInt'l* involved 38 provider hospitals, 34 of which are plaintiffs in the instant case. In its opinion, the district court concluded that, while stock maintenance costs are necessary for a corporation to exist, Medicare services can be provided without the corporate form. Such costs all were found to be directed at benefiting investors, and that their relationship to the provision of health care is too remote to be considered reasonable costs necessary for providing such care. The district court examined the provisions and legislative history that allow proprietary providers an equitable return on capital (42 U.S.C. § 1395x(v)(1)(B) (1983)) and concluded that the provisions could not be used to support the position that the term "reasonable costs" was meant to include costs for investment. The district court also concluded that there was no inconsistency in the Secretary's decision to reimburse stock maintenance costs of nonprofit corporations, while denying such reimbursement to for-profit corporations. The district court found that the primary purpose of annual meetings, filings, etc. of for-profit corporations is to enhance invest-

ments and not to provide improved medical care. The "primary purpose" test adopted by HCFA was found to be reasonable. The district court further found that, inasmuch as stock maintenance costs were not "necessary costs of rendering services," the failure to reimburse such costs did not shift the cost to non-Medicare patients. 466 F.Supp. at 615. The district court also found that PRM §§ 2134.9 and 2150.2B were "interpretative rules" which were excluded from the requirements of the Administrative Procedure Act relative to notice and opportunity to comment. 466 F.Supp. at 616.

On August 14, 1981, the Court of Appeals for the District of Columbia affirmed the district court's decision in *AMInt'l.* 677 F.2d 118 (D.C.Cir.1981). The court of appeals agreed that the stock maintenance costs at issue were not reimbursable because they were not necessarily incurred in the provision of health care services to Medicare patients. Because the district court had not addressed the issue of whether the prior decision in *AMI–Chanco* by the Court of Claims collaterally estopped the Administrator from withholding reimbursement on stock maintenance costs, the court of appeals examined in detail the "difficult and troubling aspects of the law of issue-preclusion."

The court concluded that special circumstances existed that warranted exception to the normal rules of collateral estoppel. It noted that *AMI–Chanco* involved stock maintenance costs incurred in fiscal years 1969, 1970 and 1971 and that those involved in *AMInt'l* were costs incurred on or after June 30, 1973. The court found unpersuasive defendant's contention that only *AMI–Chanco* was involved in the initial suit because it was not bound by the more technical aspects of the privity doctrine. 677 F.2d at 120 n. 9. The unusual circumstances that warranted refusal of collateral estoppel was the fact that "A federal agency, not a private party, lost on an issue of federal law, not an issue of fact, in the first law suit." It further stated "to allow non-parties to the Court of Claims' ruling to

win simply on the basis of an estoppel would mean that we simply and uncritically bind ourselves to follow another court's interpretation of a federal statute in virtually all cases involving that legislation." 677 F.2d at 121. The court concluded that such a holding, in cases raising a public law issue litigable only with the Federal Government, if the Government lost, would rigidify the law. In order to preserve the benefits that are derived from conflicts among the circuits, the court of appeals concluded that no collateral estoppel should arise in the particular circumstances. The court observed that while courts of appeal consistently recognize the importance of uniformity "they have never considered themselves hidebound by other circuits on legal questions involving federal-agency defendants." 677 F.2d at 123.

On July 30, 1982, the United States District Court for the Western District of Texas in *Sun Towers, Inc. v. Schweiker* (No. P–80–CA–16) ruled that stock maintenance costs for fiscal year 1973 were reimbursable. Plaintiffs were the Hospital Corporation of America (HCA) and 47 hospital subsidiaries. The district court found that HCA was required by law to undertake the activities that give rise to the costs and that, if it did not comply, it could not engage in business and provide hospital care to patients. The district court concluded that, with respect to the stock maintenance costs, the plaintiffs had discharged the burden of showing the Secretary's decision to disallow such costs was arbitrary, capricious and contrary to law.

On appeal (*Sun Towers, Inc. v. Heckler,* 725 F.2d 315 (5th Cir.1984)), the Fifth Circuit reversed on the stock maintenance cost issue. In an extended discussion of collateral estoppel, the court noted the discussion that attended the ruling in *United States v. Mendoza,* —— U.S. ——, 104 S.Ct. 568, 78 L.Ed.2d 379 (1984) that nonmutual collateral estoppel is not to be extended against the United States. To allow nonmutual collateral estoppel against the Government would substantially thwart the development of important questions of law by freezing the first final decision rendered on a particular issue. The Fifth Circuit accepted the admonition to allow thorough development of legal doctrine by litigation in multiple forums and held that the use of nonmutual collateral estoppel against the Secretary was foreclosed. On the merits of reimbursability of stock maintenance costs, the Fifth Circuit differed with the conclusion of the Court of Claims that the Government's disallowance of these costs was arbitrary and capricious. The Fifth Circuit did not believe the Secretary's interpretation was irrational or unreasonable. The court also differed with the Court of Claims because "we do not believe that the primary purpose test the Secretary utilized here is unreasonable or irrational." *Sun Towers, Inc.,* 725 F.2d at 328.

On August 19, 1982, the District Court for the District of Columbia in *Humana, Inc. v. Schweiker* (Nos. 75–0302, 78–0175, 78–0584, 81–0853 and 81–1311) ruled that stock maintenance costs incurred by Humana, Inc. and 64 of its subsidiary hospital corporations for fiscal years 1973–77, and to some extent for a period prior to 1973, were not reimbursable. The district court ruled that the decision in *AMInt'l* foreclosed any claim in that circuit that stock maintenance costs were necessary to provide health care services. The district court noted that the court of appeals' affirmation of the lower court in *AMInt'l* specifically addressed the issue of whether the Secretary was estopped from withholding reimbursement of stock maintenance costs given in *AMI–Chanco* and found that it was not bound by the Court of Claims decision.

On January 25, 1984, in a case involving Humana, Inc. and 37 wholly owned subsidiary hospital corporations (*Brentwood Hosp., Inc. v. United States,* Cl.Ct. (No. 614–82C, op. Jan. 25, 1984)), this court (*White,* Senior Judge) decided that stock maintenance costs for fiscal years 1971 and 1972 were not reimbursable. The court concluded that Humana was barred by the doctrine of collateral estoppel from relitigating in this court the stock maintenance issue, because it had been argued and re-

jected in the August 19, 1982, decision of the district court.

Action at the administrative level, which preceded the foregoing court rulings on the reimbursability of stock maintenance costs, reflects persistent conflict on whether such costs are reimbursable, and an aggressive pursuit by the parties involved of their respective positions. In *AMI—Chanco,* the fiscal intermediary denied the claims for reimbursement of 1969–71 costs, and the denial was upheld by the Medicare Provider Appeals Committee, before plaintiffs appealed to the Court of Claims in 1975. In *AMInt'l,* the fiscal intermediaries' determinations that the post-June 30, 1973, costs were not reimbursable were appealed to the PRRB that had been created by the 1972 amendments. 42 U.S.C. § 1395*oo*(b) (1983). The PRRB on September 8, 1977, reversed. On November 4, 1977, the HCFA Administrator reversed the PRRB and reinstated the fiscal intermediaries' determinations on nonreimbursability of stock maintenance costs. Pursuant to the 1974 changes in judicial review procedures, appeal to the United States District Court for the District of Columbia followed. 42 U.S.C. § 1395*oo*(f) (1983).

In the *Sun Towers, Inc.* cases, the fiscal intermediaries disallowed the post-June 30, 1973, costs, which decision was reversed by the PRRB on January 2, 1980. On March 6, 1980, the Deputy Administrator reversed and disallowed the stock maintenance costs, and the appeal to the District Court for the Western District of Texas followed.

In the cases involving Humana, Inc., the fiscal intermediaries in two cases disallowed stock maintenance costs for the period ending August 31, 1973, which decisions were reversed by the PRRB on December 1, 1977. Subsequently, on January 31, 1978, the Administrator reversed that portion of the PRRB decision applicable to the August 31, 1973, cost period. In later proceedings involving other hospitals, the PRRB decided that Humana's claims for stock maintenance costs for fiscal years ending 1974 and 1975 were reimbursable. The Administrator failed to take timely ac-

tion to reverse the PRRB decision for the 1974 and 1975 cost years, and the PRRB decision for those years for the hospitals involved was the final agency action in the district court proceedings. For cost years 1976 and 1977, the Administrator timely reversed the PRRB and denied the claims for reimbursement of stock maintenance costs. Similarly, the Administrator disallowed the claims for 1971 and 1972 cost years, which were the basis for the *Brentwood* case filed in the Claims Court on December 1, 1982.

In this case, plaintiffs' stock maintenance costs for various fiscal periods ending June 30, 1968, through May 31, 1973, were disallowed by the fiscal intermediaries on the basis of PRM §§ 2134.9 and 2150.2B, which were issued in 1973, subsequent to the commencement of the last cost reporting period involved. Because the periods in dispute ended prior to June 30, 1973, appeal was to the intermediaries' hearing officer. The BCA hearing officer incorporated into his record: the PRRB decision of June 8, 1977, for cost years June 30, 1973 to November 30, 1975; the Administrator's November 4, 1977, reversal of the PRRB, and the February 2, 1979, district court decision in the *AMInt'l* case. On June 23, 1980, plaintiffs were notified that the BCA hearing officer had denied reimbursement for stock maintenance costs.

On August 18, 1980, plaintiffs requested review of the BCA hearing officer's decision. By letter dated November 10, 1980, they were informed that the review would be delayed pending decision by the court of appeals in the *AMInt'l* case. Plaintiffs filed this action in the United States Court of Claims on May 26, 1981. On November 30, 1981, after a delay of 15 months, the special review officer of HCFA affirmed the BCA hearing officer's decision, on the basis of the November 4, 1977, Administrator's decision.

Plaintiffs assert that both the Claims Court and the Court of Appeals for the Federal Circuit are bound by the precedent of the Court of Claims in *AMI–Chanco.* Defendant concedes that, if this court

reaches the substantive merits of the stock maintenance cost issue, by the rules of this court and of the Federal Circuit, the decision in *AMI–Chanco* controls. General Order No. 1, 1 Cl.Ct. XXI (1982); *South Corp. v. United States,* 690 F.2d 1368 (Fed.Cir. 1982). Defendant contends, however, that, under the doctrine of collateral estoppel, the decision of the D.C. circuit in *AMInt'l* for post-June 30, 1973–75 costs precludes relitigation of entitlement to Medicare reimbursements for cost years prior to June 30, 1973. Plaintiffs reply that defendant's position is outrageous on the facts, and a misuse of subsequent contrary precedent of another circuit. Plaintiffs argue that collateral estoppel, as an equitable doctrine to be applied at the court's discretion dependent upon the facts and circumstances involved in this particular case, should not be misused so as to preclude reimbursement for the pre-June 30, 1973, stock maintenance costs at issue.

The arcane intricacies of the doctrine of collateral estoppel have been explored in detail by the courts that have considered the issue of Medicare reimbursement for stock maintenance costs of proprietary hospitals. *See generally Baldwin Park Com. Hosp. v. United States,* 4 Cl.Ct. 347 (1984); *AMInt'l,* 677 F.2d at 119–24; *Sun Towers, Inc.,* 315 F.2d at 322–23. Further exploration at this stage would not produce new or different fruit. It is sufficient therefore to summarize the conclusions that apply to this decision.

■ Recent Supreme Court decisions establish the scope of the collateral estoppel doctrine. Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based upon a different cause of action involving a party to the prior litigation. *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979). "Mutuality of parties" no longer is necessary in suits between private parties; and "defensive" collateral estoppel is allowed against the Government to preclude it from relitigating

a position against the same party to whom it had previously lost. *Id.* at 337, 99 S.Ct. at 654; *Montana v. United States,* 440 U.S. 147, 164, 99 S.Ct. 970, 979, 59 L.Ed.2d 210 (1979). Offensive use of collateral estoppel occurs when a plaintiff seeks to foreclose a defendant from relitigating an issue the defendant has previously litigated unsuccessfully in another action against the same or a different party. Defensive use of collateral estoppel occurs when a defendant seeks to prevent a plaintiff from relitigating an issue the plaintiff has previously litigated unsuccessfully in another action against the same or a different party. *Parklane Hosiery,* 439 U.S. at 326 n. 4, 99 S.Ct. at 649 n. 4.

■ In cases where the Government is involved, mutuality retains its importance and *Parklane's* approval of nonmutual offensive collateral estoppel is not to be extended to the United States because such cases would thwart the development of important questions of law by freezing the first final decision rendered on a particular legal issue. *United States v. Mendoza,* — U.S. at —, 104 S.Ct. at 573. The doctrine of "mutual" defensive collateral estoppel is applied against the United States to preclude relitigation of the same issue already litigated against the same party in another case and the facts are virtually identical. *United States v. Stauffer Chem. Co.,* — U.S. —, 104 S.Ct. 575, 78 L.Ed.2d 388 (1984).

■ In summary, the doctrine of collateral estoppel may be invoked when: (1) the issue as to which the doctrine is asserted was the same in the previous litigation as in the current litigation; (2) the issue was "actually litigated" in the previous case and was necessary and essential to the resulting judgment; (3) there have been no significant changes in the facts or in the applicable legal principles since the initial decision; (4) all the parties as to whom collateral estoppel is asserted were fully represented in the previous action, either directly or through other parties or privies that have related financial or proprietary interests; and (5) there are no special cir-

cumstances indicating that the use of collateral estoppel would be inappropriate. *Baldwin Park Com. Hosp. v. United States*, 4 Cl.Ct. 347 (1984).

■ The legal issue of the reimbursability of stock maintenance costs is the same in this case as it was in *AMI–Chanco* decided by the Court of Claims and, in *AMInt'l* decided by the D.C. Circuit. There is no dispute on the facts that relate to incurrence of stock maintenance costs. The facts are not "identical," however, because different cost years are involved: *AMI–Chanco* concerned cost years 1969–71, *AMInt'l* with cost years July 1973–75, and this case concerns 1969–June 1973 cost years. The current developments in the law of collateral estoppel have extended application of the doctrine to facts that are "substantially" the same where no change in facts is of "controlling significance." *Montana*, 440 U.S. at 159–61, 99 S.Ct. at 976–77. In this case the facts are nearly identical to *AMI–Chanco*. Some of the plaintiffs in this case, who were not in *AMI–Chanco*, have claims for the years there decided; those providers which prevailed in *AMI–Chanco* have claims for other years.

Plaintiffs in this case either were parties in the *AMI–Chanco* case and the *AMInt'l* cases, or are privies that have related financial interests. In *AMInt'l*, the court denied collateral estoppel effect of *AMI–Chanco*, notwithstanding the showing in the administrative record that 23 plaintiffs directly benefited from *AMI–Chanco*. The concept of privies, entities related by financial or proprietary interests, has been recognized for decades. *See Chicago, R.I. & P. Ry. Co. v. Schendel*, 270 U.S. 611, 620, 46 S.Ct. 420, 423, 70 L.Ed. 757 (1926) (substantial identity between parties). It is irrelevant that a plaintiff was not a named party in the prior litigation. *Ma Chuck Moon v. Dulles*, 237 F.2d 241, 243 (9th Cir.1956), *cert. denied*, 352 U.S. 1002, 77 S.Ct. 559, 1 L.Ed.2d 547 (1957). *See also* Restatement of Judgments § 83 (1942); Restatement (Second) of Judgments § 41 (1982) (privy includes those whose interests are represented); 1B Moore's Federal Prac-

tice ¶ 0.411[1] at 390 (2d ed. 1983) (privy is a person who accepts benefits). Clearly, the *AMInt'l* plaintiffs were "privy" to the *AMI–Chanco* case. The *AMInt'l* appellate court noted that AMI and AMI–Chanco were parties in the Court of Claims litigation, but refused to apply the doctrine of collateral estoppel on the ground that it "patently would be unfair" to apply one rule for AMI and AMI–Chanco, and another for the other subsidiaries. *AMInt'l*, 677 F.2d at 124.

■ There are special circumstances that warrant an exception to the collateral estoppel doctrine in the context of the development of the litigation concerning Medicare's reimbursement of stock maintenance costs. In the first place, the law as it has developed does not require application of the doctrine against these plaintiffs in this case. Collateral estoppel is an equitable doctrine; it should not be applied when it would be unjust. *Montana*, 440 U.S. at 155 & 164 n. 11, 99 S.Ct. at 974 & 979 n. 11; *Parklane Hosiery*, 439 U.S. at 331 & n. 15, 99 S.Ct. at 651 & n. 15; *Red Lake Band v. United States*, 229 Ct.Cl. 272, 667 F.2d 73 (1981); *Nations v. Sun Oil Co. (Del.)*, 705 F.2d 742, 744 (5th Cir.1983); *United States v. I.T.T. Rayonier*, 627 F.2d 996, 1000 (9th Cir.1980); *In re Cenco Inc.*, 529 F.Supp. 411 (N.D.Ill.1982); *Defenders of Wildlife v. Andrus*, 77 F.R.D. 448 (D.D.C.1978); Restatement of Judgments § 70 (1942); 1B Moore's Federal Practice, § 0.442[2], at 751 (2d ed. 1983).

It would be inequitable and unjust to deny reimbursement for 1972–73 cost years to those plaintiffs who had previously been allowed such reimbursement in the Court of Claims for 1969–71 costs. Similarly, it would be unjust to deny other plaintiffs, who are related financial interests, reimbursement for 1969–71 costs that have been determined by the Court of Claims in *AMI–Chanco* to be reimbursable.

The policy reason for the collateral estoppel doctrine is to conserve judicial resources, discourage multiple lawsuits which seek the most favorable court results, and prevent inconsistent decisions.

*Montana,* 440 U.S. at 153–54, 99 S.Ct. at 973–74. In this case, however, the change in the forum for Medicare appeals was mandated by statute, and plaintiffs had no choice but to go to the district court to appeal disallowance of post-June 30, 1973, costs. There would have been no relitigation had the Administrator followed the Court of Claims decision in *AMI–Chanco,* or had not delayed administrative action to resolve costs for periods pre-June 30, 1973, for 15 months pending the appeal in *AM-Int'l.*

█ For the foregoing reasons, and in order to secure the benefits to be derived from a preservation of the conflict between the circuits in this particular factual nexus, the doctrine of collateral estoppel should not be applied. As to the substantive merits of reimbursements for stock maintenance costs for the years in issue, this court is bound by the Court of Claims decision in *AMI–Chanco.* Accordingly, plaintiffs' motion for summary judgment is allowed and defendant's cross-motion is denied.

Plaintiffs' complaint states the stock maintenance costs in issue amount to $1,097,818. Defendant's motion for summary judgment is a recognition that no material facts are in dispute. The administrative record, however, indicates such costs in fact may be a lesser amount. In order that final judgment may be entered expeditiously, counsel are directed to file a stipulation, on or before April 20, 1984, as to the exact amount plaintiffs are entitled to recover.