AMERICAN MEDICAL INTERNATION-
AL, INC., et al., Appellants,

v.

SECRETARY OF HEALTH, EDUCA-
TION AND WELFARE.

No. 79–1460.

United States Court of Appeals,
District of Columbia Circuit.

Argued March 21, 1980.

Decided Aug. 14, 1981.

Jon David Epstein, Houston, Tex., and Robert A. Klein, Washington, D. C., of the bar of the Supreme Court of California, pro hac vice by special leave of Court, with whom Philip W. Buchen, Washington, D. C., and Dennis O. Barry were on the brief, for appellants.

Paul A. Gaukler, Atty. Dept. of Justice, Washington, D. C., of the bar of the Supreme Court of North Dakota, pro hac vice by special leave of Court, with whom Alice Daniel, Asst. Atty. Gen., Dept. of Justice, Washington, D. C., at the time the brief was filed, Charles F. C. Ruff, U. S. Atty., Anthony J. Steinmeyer, Atty., Dept. of Justice, and David Palmer, Atty., Dept. of

Health and Human Services, Washington, D. C., were on the brief, for appellee.

Joseph E. Casson, Lee Calligaro and Malcolm J. Harkins, Washington, D. C., were on the brief for Federation of American Hospitals, amicus curiae, urging reversal.

Before ROBINSON, Chief Judge, WRIGHT, Circuit Judge and AUBREY E. ROBINSON, Jr.,* District Judge.

Opinion filed PER CURIAM.

PER CURIAM:

Appellants—American Medical International, Inc. (AMI), more than thirty of its hospital subsidiaries, and a hospital it manages—challenged in the District Court a decision by the Administrator of the Health Care Financing Administration, a division of the Department of Health and Human Services, denying reimbursement of certain costs that appellants allegedly absorbed while furnishing health care to beneficiaries of the Medicare program.[1] The District Court upheld that ruling and rejected the claim.[2]

For reasons amply delineated by the District Court,[3] we agree that the costs in question are not reimbursable because they were not necessarily incurred in the provision of health-care services to Medicare patients, as is required by the Medicare Act.[4] That does not entirely dispose of the case, however, for the court did not address one issue: Whether the Administrator is collaterally estopped from withholding reimbursement of so-called "stock maintenance costs,"[5] the status of which was a question raised by appellant AMI-Chanco[6] and decided against the Federal Government in earlier litigation in the Court of Claims.[7] That problem implicates some of the most difficult and troubling aspects of the law of issue-preclusion, and thus, we believe, demands full treatment.

I

The Secretary insists that an estoppel is foreclosed by the Supreme Court's decision in *Commissioner v. Sunnen*[8] three decades

* Of the United States District Court for the District of Columbia, sitting by designation pursuant to 28 U.S.C. § 292(a) (1976).

1. *American Medical Int'l, Inc. v. Secretary of HEW*, 466 F.Supp. 605 (D.D.C.1979).

2. *Id.* at 609.

3. *Id.* at 612–616.

4. 42 U.S.C. §§ 1395 *et seq.* (1976).

5. These are costs attending maintenance of a corporation's capital stock: accounting and other expenses related to Securities and Exchange Commission filings, stock transfer fees, and expenses in connection with stockholder annual reports and meetings.

On the basis of *Memorial, Inc. v. Harris*, 655 F.2d 905 (9th Cir. 1980), and *Pacific Coast Medical Enterprises v. Harris*, 633 F.2d 123 (9th Cir. 1980), decided after rendition of the District Court's opinion herein, appellants also argue that the Secretary is collaterally estopped on the issue of reimbursement of certain "stock acquisition costs." The plaintiffs in those cases had bought 100% of the capital stock of Medicare-provider corporations and shortly thereafter had liquidated the corporations. The Ninth Circuit held that, for purposes of Medicare reimbursements, the plaintiffs were entitled to treat the corporate acquisitions as purchases of assets and to revalue those assets. Neither decision, however, bars the Secretary from litigating the question whether in the case before us the purchase of stock of Medicare providers is to be treated as a purchase of assets. In the Ninth Circuit cases there were immediate liquidations and revaluations, but in the instant case there has never been a liquidation of the acquired hospitals, and attempted revaluation was delayed until a subsequent merger between the purchasing corporation and an independent entity. Inasmuch as the facts and the resulting legal issue in *Memorial* and *Pacific Coast Medical Enterprises* differ entirely from those here, collateral estoppel cannot be invoked against the Secretary on the basis of those cases.

6. AMI-Chanco, which merged with AMI in 1972, is now an AMI subsidiary.

7. *AMI-Chanco v. United States*, 576 F.2d 320 (Ct.Cl.1978). At issue in that suit were stock maintenance costs incurred in the years 1969, 1970, and 1971; involved here are those incurred on or after June 30, 1973. See *American Medical Int'l, Inc. v. Secretary of HEW, supra* note 1, 464 F.Supp. at 608.

8. 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948).

ago. That argument, at first glance, seems persuasive.[9] So long as the facts in two cases are formally "separable," the *Sunnen* Court declared, it is inappropriate to use a judgment in the first to estop a party on a legal point in the second:

> [I]f the relevant facts in the two cases are separable, even though they be similar or identical, collateral estoppel does not govern the legal issues which recur in the second case. Thus the second proceeding may involve an instrument or transaction identical with, but in form separable from, the one dealt with in the first proceeding. In that situation, a court is free in the second proceeding to make an independent examination of the legal matters at issue.... Before a party can invoke the collateral estoppel doctrine in these circumstances, the legal matter raised in the second proceeding must involve the same set of events or documents and the same bundle of legal principles that contributed to the rendering of the first judgment.[10]

■ This prong of *Sunnen* has never been popular with commentators—who maintain that formal separability of facts, without some difference pertinent to the first decision, does not justify denial of preclusive effect to the initial adjudication[11]—and has also been less scrupulously applied by the courts.[12] If valid, however, *Sunnen*'s separable-facts doctrine would, as the Secretary suggests, appear to control here, for the Court of Claims' litigation involved different years—and hence a different, though for all relevant purposes an identical, bundle of facts—from those in the case at bar.[13]

There is, however, no need to wrestle with the intricacies of this problem, for the controversial aspect of *Sunnen* is no longer good law. In one of its most recent analyses of collateral estoppel, the Supreme Court allowed a judgment predicated upon one set of contracts to estop litigation of legal issues in another case dealing with a similar, though unrelated, set of contracts, because there had been no "changes in facts essential to [the] judgment."[14] The first ruling had not been "predicated"[15] on facts peculiar to the contracts there in issue, so that differences in the documents were not of "controlling significance."[16] While the Court did not expressly overrule the separable-facts doctrine, it characterized *Sunnen* as holding simply "that modifications in

9. Brief of Appellee at 38. The Secretary also advances two less potent contentions against an application of estoppel. The first is that only AMI-Chanco can seek to estop, since only it was involved in the initial suit, and assertedly it is not in privity with either AMI or its sister subsidiaries. *Id.* at 36–37. But in light of the Supreme Court's recent decisions in *Montana v. United States*, 440 U.S. 147, 154 n.5, 99 S.Ct. 970, 974 n.5, 59 L.Ed.2d 210, 217 n.5 (1979) and *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 324 n.4, 99 S.Ct. 645, 649 n.4, 58 L.Ed.2d 552, 559 n.4 (1979) (approving use of offensive collateral estoppel "when the plaintiff seeks to foreclose the defendant from litigating an issue the defendant has previously litigated unsuccessfully in an action with another party"), it is clear that courts are no longer bound by the more technical aspects of the privity doctrine. The Secretary further argues that there are especially broad limitations on judicial discretion to erect an estoppel on issues of law. Brief of Appellee at 37–38. We find that position unpersuasive in light of *Montana v. United States, supra,* and *Carr v. District of Columbia,* 207 U.S.App.D.C. 264, 646 F.2d 599 (1980).

10. *Commissioner v. Sunnen, supra* note 8, 333 U.S. at 601, 68 S.Ct. at 721, 92 L.Ed. at 907–908.

11. See, *e.g.,* 1B J. Moore, Federal Practice ¶¶ 0.442[4], 0.448 at 3415, 4237–4239 (1980). On how different the two causes of action can be, see *Carr v. District of Columbia, supra* note 9, 207 U.S.App.D.C. at 273 n.47, 646 F.2d at 608 n.47.

12. Compare *Starker v. United States,* 602 F.2d 1341, 1346 n.1 (9th Cir. 1979), and cases cited with *Carr v. District of Columbia, supra* note 9, 207 U.S.App.D.C. at 273 n.47, 646 F.2d at 608 n.47 and *United States v. St. Louis-San Francisco Ry.,* 537 F.2d 312, 316–317 (8th Cir. 1976) (estoppel allowed though different tax years involved).

13. See note 7 *supra.*

14. *Montana v. United States, supra* note 9, 440 U.S. at 159, 99 S.Ct. at 976, 59 L.Ed.2d at 220.

15. *Id.,* 99 S.Ct. at 977, 59 L.Ed.2d at 220.

16. *Id.* at 160, 99 S.Ct. at 977, 59 L.Ed.2d at 221.

'controlling legal principles' . . . could render a previous determination inconsistent with prevailing doctrine;"[17] "unless there have been major changes in the law," the Court said, *Sunnen* is inapplicable.[18] Since this cannot be squared with *Sunnen's* declaration that "the legal matter raised in the second proceeding must involve the same set of events or documents" as that involved in the first,[19] it seems clear that "*Sunnen* was limited by the Court . . . to cases in which there had been a significant 'change in the legal climate. . . .' "[20] Plainly that is not the case here.

## II

Although it is thus apparent that an estoppel is not inexorably foreclosed by Supreme Court authority, the inquiry cannot end at this point. "[S]pecial circumstances," the Court has admonished, "warrant an exception to the normal rules of preclusion."[21] It remains to inquire whether the circumstances here are so unusual that the administration of justice would best be served by refusing an estoppel in the instant proceeding.

Were this a case involving only private litigants or only simple issues of fact, we would not hesitate to conclude that an estoppel should arise. The case would then stand like any other in which "the issues presented by [the] litigation are in substance the same as those resolved [earlier, and the] controlling facts or legal principles have [not] changed significantly since the [first] judgment. . . ."[22] This is not, however, a typical case. A federal agency, not a private party, lost on an issue of federal law, not an issue of fact, in the first lawsuit. To allow nonparties to the Court of Claims' ruling[23] to win simply on the basis of an estoppel would mean that we simply and uncritically bind ourselves to follow another court's interpretation of a federal statute in virtually all cases involving that legislation. The broader and more serious implication of such a holding is that the first court to hear a case raising a public law issue litigable only with the Federal Government would—if it ruled against the Government—rigidify the law to be applied by every court in every case presenting that issue.[24] What makes that both possible and

---

**17.** *Id.* at 161, 99 S.Ct. at 977, 59 L.Ed.2d at 222.

**18.** *Id.*

**19.** *Commissioner v. Sunnen, supra* note 8, 333 U.S. at 601, 68 S.Ct. at 721, 92 L.Ed. at 907–908.

**20.** *Starker v. United States, supra* note 12, 602 F.2d at 1347, quoting *Montana v. United States, supra* note 9, 440 U.S. at 161, 99 S.Ct. at 978, 59 L.Ed.2d at 222. But see *Western Oil & Gas Ass'n v. EPA,* 633 F.2d 803, 809 (9th Cir. 1980) ("[t]he *Sunnen* principles continue to provide valuable guidance").

**21.** *Montana v. United States, supra* note 9, 440 U.S. at 155, 99 S.Ct. at 975, 59 L.Ed.2d at 218. Accord, *Standefer v. United States,* 447 U.S. 10, 23, 25, 100 S.Ct. 1999, 2007–2008, 64 L.Ed.2d 689, 700–701 (1980).

**22.** *Montana v. United States, supra* note 9, 440 U.S. at 155, 99 S.Ct. at 975, 59 L.Ed.2d at 218.

**23.** Most of the entities attacking the Administrator's decision here were not parties to the proceeding in the Court of Claims. See note 9 *supra* and text *supra* at note 7.

**24.** The type of situation we refer to has a particular makeup. The legal issue must be such—like the one now before us—that a federal agency or officer necessarily will be a party to every suit in which it arises. If private parties can litigate the issue between themselves, the law cannot be frozen by a single ruling, for they will not be bound by prior adjudications with which they were not associated. Furthermore, the governmental unit must have lost the first case presenting the question; for if it won the first but loses subsequently, it is sheltered by *Parklane's* caveat on inconsistent prior decisions. See *Parklane Hosiery Co. v. Shore, supra* note 9, 439 U.S. at 330, 99 S.Ct. at 651–652, 58 L.Ed.2d at 561–562. Additionally, third parties must be drawn into the second and subsequent suits, for—absent special circumstances, see text *supra* at notes 21–22—there is nothing improper or inequitable in letting a party reap the estoppel effects of a judgment he has won; the danger addressed here is that an estoppel will fix unalterably the meaning of the statute for everyone everywhere. See note 46 *infra.* Finally, the legal point at stake must be one of national import, for otherwise the adjudication will not have a potentially preclusive effect nationwide, and it would not become important to deny estoppel to facilitate independent reexamina-

alarming are the Supreme Court's relatively recent estoppel decisions doing away with mutuality,[25] sanctioning application of offensive estoppel,[26] and generally broadening the permissible uses of issue-preclusion when questions of law are involved.[27]

This court has not yet faced squarely the problem whether, given the new estoppel rules, federal relitigation of questions of national law with new parties in new circuits should be permitted.[28] Three other courts, however, have addressed that question,[29] and each has concluded that no collateral estoppel should arise in such circumstances.[30] They all bottom their decisions on one central policy argument: that "in the context of agency relitigation of legal issues with substantial public policy implications," [31] "inquiry by other circuits should not be foreclosed; indeed, a conflict among

the circuits could be a healthy matter." [32] And whatever might be said of the technical legal arguments made by these courts,[33] the policy they adopted is valid and, we believe, ultimately persuasive.

It can hardly be gainsaid that complex questions of national import can wholesomely and profitably be explored by more than a single court. And it is a truism that proposed legal rules can be improved through repeated examination by a variety of legal minds. Rigorous analysis of the law and concomitantly its healthy development would thus be hampered were an estoppel indulged in a case such as this. By the same token, independent reconsideration of legal issues by the circuits can facilitate Supreme Court review by highlighting their complications and controversial aspects,[34] and thus make for better informed

tion across the circuits. See text *supra* at note 16.

**25.** *Parklane Hosiery Co. v. Shore, supra* note 9, 439 U.S. at 327–331, 99 S.Ct. at 650–652, 58 L.Ed.2d at 559–562.

**26.** *Id.;* see also *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971).

**27.** Compare 1B J. Moore, *supra* note 11, ¶ 0.448 at 4234, Restatement of Judgments § 70 (1942), and *Moser v. United States,* 266 U.S. 236, 45 S.Ct. 66, 69 L.Ed. 262 (1924) with *Montana v. United States, supra* note 9, 440 U.S. at 162–163, 99 S.Ct. at 978–979, 59 L.Ed.2d at 222–224 and Restatement (Second) of Judgments, § 68.1 at 27 (Tent. Draft No. 4, 1977).

**28.** We have held the Government estopped when legal issues of only local import—those unlikely to be raised in other circuits—were resolved. *E.g. Carr v. District of Columbia, supra* note 9, 207 U.S.App.D.C. at 273 & n.47, 646 F.2d at 608 & n.47.

**29.** *Divine v. Commissioner,* 500 F.2d 1041 (2d Cir. 1974); *Western Oil & Gas Ass'n v. EPA, supra* note 20, 633 F.2d at 808–809; *United States v. Anaconda Co.,* 445 F.Supp. 486, 496 (D.D.C.1977).

**30.** But see *Starker v. United States, supra* note 23, 602 F.2d at 1348 n.5.

**31.** *Western Oil & Gas Ass'n v. EPA, supra* note 27, 633 F.2d at 809.

**32.** *United States v. Anaconda Co., supra* note 29, 445 F.Supp. at 496.

**33.** *Western Oil & Gas Ass'n* relied in part on the continuing vitality of the *Sunnen* separable-facts doctrine, see 633 F.2d at 809, and did not mention the contrary holding of an earlier in-circuit case, *Starker v. United States, supra* note 12, 602 F.2d at 1346–1347 & n.4. We believe that branch of *Sunnen* is no longer dependable. See notes 14–20 *supra,* and accompanying text. *Divine* and *Anaconda,* which were decided before *Parklane,* were premised on the proposition that the mutuality doctrine still endures, an idea since laid to rest. See *Starker v. United States, supra* note 12, 602 F.2d at 1348 n.5. And the *Divine* reasoning appears to suffer from an additional weakness. The court there declared that its principal aim was achievement of national uniformity in the tax laws; estoppels would reduce splits in the circuits and the likelihood of Supreme Court review. But it seems to us that the surest way to obtain decisional uniformity is to give estoppel effect to the earliest judgment. Finally, for reasons unique to Second Circuit jurisprudence, *Divine* limited its holding to cases involving questions of law "subject to varying appraisals," a standard largely subjective, and obviously difficult of application. See Kelly & Rothenberg, *The Use of Collateral Estoppel by a Private Party in Suits Against Public Agency Defendants,* 13 J.L.Ref. 303, 322–323 (1980). We need not consider whether such a limitation should be adopted here, for the question before us doubtless is complex enough to be "subject to varying appraisals."

**34.** *Cf. Train v. Natural Resources Defense Council, Inc.,* 421 U.S. 60, 75, 95 S.Ct. 1470, 1479, 43 L.Ed.2d 731, 743 (1975) ("[t]he disparity among Courts of Appeals rather strongly

decisions. Indeed, the Court itself has acknowledged the value of such a shifting process in the courts of appeals. In a recent case presenting a problem dividing the circuits, the Court noted that "[t]his litigation exemplifies the wisdom of allowing difficult issues to mature through full consideration by the courts of appeals. By eliminating . . . many subsidiary, but still troubling, arguments . . . these courts have vastly simplified our task, as well as having underscored the reasonableness of the [ultimately prevailing] view." [35]

This conclusion draws support from the treatment traditionally accorded decisions of sister circuits by the courts of appeals themselves. When cases presenting legal questions with national implications have arisen, this court has always considered itself obligated to subject the analyses of coordinate tribunals to close scrutiny, with the aim of producing a sound and well-reasoned decision.[36] More generally, while the courts of appeals consistently recognize the importance of uniformity,[37] they have never considered themselves hidebound by other circuits on legal questions involving federal-agency defendants,[38] perhaps because "[i]ssue preclusion has never been applied to issues of law with the same rigor as to issues of fact." [39] Moreover, relitigation of

legal questions across the circuits has been the policy of many federal agencies.[40] To an extent, of course, the vitality of these practices has been threatened by the Supreme Court's recent decisions on collateral estoppel. But the earlier law cannot be dismissed out of hand; the policies undergirding it [41] are the very sort of countervailing factors [42] that, absent clear Supreme Court authority to the contrary, may justify a refusal to apply estoppel.

This is not to say that arguments opposing relitigation of issues lose all force in cases like the one at bar. Duplicative litigation has its own irreducible minimum of waste,[43] and there is much to be said in favor of invariable sameness and resulting certainty in the law. That it is more important to have a sure rule than to have the right rule is a dictum noted with such frequency that it has evolved from truism to cliche.[44] And there is an element of inequity in a special rule applicable only in litigation against the Government, particularly since federal agencies are in a better position than most litigants to petition the Supreme Court or Congress to modify what they believe to be erroneous interpretations of national law.[45] But all that these considerations suggest is that the courts should be cautious in declining to apply estoppel to

indicates that the question does not admit of an easy answer").

**35.** *E. I. du Pont de Nemours & Co. v. Train,* 430 U.S. 112, 135 n.26, 97 S.Ct. 965, 979 n.26, 51 L.Ed.2d 204, 222 n.26 (1977).

**36.** See, *e.g., United States v. Washington Post Co.,* 144 U.S.App.D.C. 326, 446 F.2d 1327, *aff'd per curiam,* 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971); *City Stores Co. v. Lerner Shops, Inc.,* 133 U.S.App.D.C. 311, 410 F.2d 1010 (1969); *Eli Lily & Co. v. Brenner,* 126 U.S.App.D.C. 171, 375 F.2d 599 (1967); *Waters v. American Auto Ins. Co.,* 124 U.S.App.D.C. 197, 363 F.2d 684 (1966).

**37.** See, *e.g., Federal Life Ins. Co. v. United States,* 527 F.2d 1096 (7th Cir. 1975); *Cosentino v. Local 28, International Organization of Masters,* 268 F.2d 648, 652 (8th Cir. 1959).

**38.** See *Western Oil & Gas Ass'n v. EPA, supra* note 20, 633 F.2d at 808 & n.6; Vestal, *Relitigation by Federal Agencies: Conflict, Concurrence and Synthesis of Judicial Policies,* 55 N.C.

L.Rev. 123, 141–159 (1976) (survey of the circuits).

**39.** *Segal v. American Tel. & Tel. Co.,* 606 F.2d 842, 845 (9th Cir. 1979).

**40.** See Vestal, *supra* note 38, 55 N.C.L.Rev. at 123.

**41.** See Restatement (Second) of Judgments § 68.1 at 30–31 (Tent. Draft No. 4, 1977).

**42.** See cases cited *supra* note 21.

**43.** See Vestal, *supra* note 38, 55 N.C.L.Rev. at 127, 169–170; Kelly & Rothenberg, *supra* note 33, 13 J.L.Ref. at 323–324.

**44.** See *Burnet v. Coronado Oil & Gas Co.,* 285 U.S. 393, 406, 52 S.Ct. 443, 447, 76 L.Ed. 815, 823 (1932) (dissenting opinion); Vestal, *supra* note 38, 55 N.C.L.Rev. at 166, 174–176.

**45.** See Vestal, *supra* note 38, 55 N.C.L.Rev. at 178.

previously litigated questions of law, not that they should never do so.

## III

The foregoing analysis intercepts only parties who did not participate in the initial suit. If the Government is litigating with the same adversary in both cases, an estoppel will petrify the law only as to that one party—obviously not an unjust result—and accordingly will work no preclusion generating national shockwaves.[46] What has been said up to this point, then, does not apply to AMI-Chanco, which was directly involved in the Court of Claims litigation.[47]

That brings us to the crux of the matter here. It patently would be unfair to apply one rule for AMI and AMI-Chanco, and another for the other subsidiaries. The consensus of the legal profession is that "[r]efusal of preclusion is ordinarily justified if the effect of applying preclusion is to give one person a favored position in current administration of the law."[48] We are in full accord. Collateral estoppel "is not meant to create vested rights in decisions . . . thereby causing inequities among [similarly situated parties]."[49] To permit an estoppel here would do exactly that. The judgment of the District Court is accordingly

*Affirmed.*

---

**46.** See note 24 *supra.* It is true, of course, that legal analysis might well benefit were all the circuits free to consider independently identical questions of law arising between a single party and the Government—or, for that matter, two private parties. It is also true that such treatment might facilitate Supreme Court review in ways already described. See text *supra* at notes 34–35. Estoppels in such cases would not entirely block those avenues, however, for those not parties to the first suit could still litigate the issue. In such situations, then, policies favoring preclusion would appear to outweigh the disadvantages discussed above.

**47.** See note 9 *supra* and notes 6–7 *supra* and accompanying text.

**48.** Restatement (Second) of Judgments § 68.1 at 33 (Tent. Draft No. 4, 1977).

**49.** *Commissioner v. Sunnen, supra* note 8, 333 U.S. at 599, 68 S.Ct. at 720, 92 L.Ed. at 906–907.