NATIONAL MEDICAL ENTERPRISES, INC., and its wholly owned subsidiaries, Doctors Hospital of Modesto, Northgate General Hospital, and Alvarado Community Hospital

v.

The UNITED STATES.

No. 742–85C.

United States Claims Court.

Dec. 10, 1986.

Carol N. Park-Conroy, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, for defendant.

## OPINION

YOCK, Judge.

Plaintiffs seek reimbursement for stock maintenance costs, plus interest, incurred during their 1973 fiscal year under Part A of the Medicare Program. 42 U.S.C. § 1395, *et seq.* (1970 & Supp. II 1972). The case is before this Court on cross-motions for summary judgment. Oral argument was heard on December 8, 1986. For the reasons discussed herein, plaintiffs' motion for summary judgment is allowed in part as it relates to the reimbursement of the principal amount in issue. Defendant's motion for summary judgment also is allowed in part as it relates to the award of interest. The remainder of both motions is denied.

### Facts

Plaintiff, National Medical Enterprises, Inc. (NME), owns and operates Doctors Hospital of Modesto, Northgate General Hospital and Alvarado Community Hospital in California, also plaintiffs in this action. Each hospital is a provider of hospital services under Part A of the Medicare Program. 42 U.S.C. § 1395, *et seq.* (1970 & Supp. II 1972). Through the Secretary of the Department of Health and Human Services (Secretary), defendant, the United States, administers the Medicare Program.

During its 1973 fiscal year, NME, a publicly traded corporation, incurred costs categorized as stock maintenance costs.[1] The plaintiff hospitals claimed an allocable portion of these costs as allowable on their Medicare cost reports for the fiscal year ended May 31, 1973. Acting pursuant to the Provider Reimbursement Manual (HIM–15), Aetna Life Insurance Company, the fiscal intermediary, disallowed the claimed stock maintenance costs. HIM–15, §§ 2150.2B(1), 2134.9.[2]

Notices of Medicare Program Reimbursement (NPRs) regarding the stock maintenance costs for the 1973 fiscal year were issued to plaintiffs in September 1983. Thereafter, on March 9, 1984, plaintiffs filed a request for an administrative appeal with the fiscal intermediary which was granted.

On June 27, 1984, an intermediary decision upholding the disallowance of the stock maintenance costs was announced. The hearing officer determined that "[c]osts relevant to the proprietary and equity interests of the stockholders, but not related to patient care, are excluded from allowable costs. [Pursuant to HIM–15, § 2134.9] [t]he Intermediary therefore was bound to remove the stock maintenance costs from the cost report under appeal."

On July 13, 1984, plaintiffs filed their initial lawsuit in this Court seeking reimbursement of the stock maintenance costs together with interest. This initial suit was dismissed without prejudice on Sep-

---

1. Stock maintenance costs include: cost of annual reports to shareholders, cost of annual meetings, stock transfer agent fees, stock and exchange registration fees, and the costs of filing reports with the Securities and Exchange Commission.

2. The principal amounts in controversy are: Doctors Hospital of Modesto $6,400, Northgate General Hospital $3,100, and Alvarado Community Hospital $2,900.

tember 11, 1985, due to plaintiffs' failure to exhaust their administrative remedies. On that same day, plaintiffs requested an administrative review by the Secretary. On December 6, 1985, the Secretary affirmed the hearing officer's disallowance of the stock maintenance costs in question.

On December 17, 1985, plaintiffs again filed suit in this Court seeking reimbursement of the disputed costs plus interest. After the allowance of a Motion for Enlargement of Time, defendant answered plaintiffs' complaint by denying that plaintiffs were entitled to any relief. Plaintiffs then filed their motion for summary judgment. Thereafter, defendant was granted a second enlargement of time based on its indication that "reimbursement of the full principal amount, without interest, claimed by plaintiff [sic] as stock maintenance costs for the fiscal year ending May 21, [sic] 1973, has been approved by both the Department of Justice and the Department of Health and Human Resources." [3]

The Government tendered an offer for the principal sums in question to plaintiffs on June 3, 1986. This offer was immediately rejected on the ground that it was inadequate because the tendered offer did not: (1) reimburse plaintiffs for all of their stock maintenance costs for all fiscal years, including those subsequent to 1973; (2) include interest on the sums in question for 1973 as well as on the sums in question in subsequent years; and (3) reimburse plaintiffs for the costs involved in the instant litigation, including attorney's fees.

### Discussion

Plaintiffs, in their motion for summary judgment, argue that they are entitled to reimbursement for the stock maintenance costs in issue. They contend that because the issues are identical, this Court is bound by the precedent announced by the United States Court of Claims in *AMI-Chanco, Inc. v. United States*, 217 Ct. Cl. 76, 576 F.2d 320 (1978).

In its cross-motion for summary judgment, the Government asserts that because an offer to reimburse plaintiffs for the principal amounts of their stock maintenance costs was tendered, that part of plaintiffs' claim is now moot. Defendant further asserts that plaintiffs are not entitled to interest because there is no express statutory provision authorizing such payment. Section 1395oo(f)(2) note (1982) of Title 42 expressly allows interest on judgments awarded by courts for fiscal years ending on or after June 30, 1973. Citing *Pacific Coast Medical Enterprises, Inc. v. United States*, 3 Cl. Ct. 140 (1983), defendant contends that because Congress specifically provided for interest awards for fiscal years ending after June 30, 1973, it did not intend to permit interest awards for judgments relating to prior years. Defendant argues that because plaintiffs are not entitled to interest, this portion of their claim is also moot.

Plaintiffs counter defendant's assertions and argue that the mootness doctrine is inapplicable because first, the issue represents a continuing controversy between these plaintiffs and the Secretary, and second, the tendered payment was inadequate. Further, plaintiffs do not rely on 42 U.S.C. § 1395oo(f)(2) as the statutory basis for the award of interest. Rather, plaintiffs contend that because the Secretary voluntarily decided to reimburse the stock maintenance costs, interest is recoverable pursuant to 42 U.S.C. § 1395g(d) (1982) as implemented by 42 C.F.R. § 405.376.

### A. Mootness

■ Defendant contends that notwithstanding plaintiffs' return of the reim-

---

**3.** Plaintiffs have requested that sanctions be imposed on the Government pursuant to RUSCC 11 due to an alleged lack of good faith on the part of the Government. Plaintiffs claim that the Government knew that this circuit permitted reimbursement for stock maintenance costs; yet in its answer, the defendant denied that plaintiffs were entitled to any relief. "Only after the Government devised a scheme to try to avoid the collateral estoppel effect of an adverse court decision [*i.e.*, defendant's mootness argument] did it abandon its long history of refusing payment." Thus, sanctions under Rule 11 should be imposed. This Court believes that the imposition of sanctions is not warranted and, therefore, denies that part of the plaintiffs' request.

bursement checks, the tender of payment for the principal amount of the fiscal year 1973 stock maintenance costs renders this case moot. In opposition, plaintiffs call two matters to the Court's attention. First, plaintiffs claim that this is not an isolated occurrence. The Secretary also has refused to reimburse stock maintenance costs incurred in post–1973 fiscal years; NME and the plaintiff hospitals assert that these post–1973 claims are being actively pursued in district court. Because the alleged illegal activity, *i.e.,* the Secretary's refusal to reimburse plaintiffs, is of a continuing nature, the payment of the 1973 stock maintenance costs will not resolve the entire conflict. *Church of Scientology of Hawaii v. United States,* 485 F.2d 313 (9th Cir.1973). Second, plaintiffs claim that the mootness doctrine is inapplicable because the amount tendered was inadequate since it did not include interest or costs of litigation.

The Government's counter-argument is two-fold. Defendant argues first that because the Claims Court has jurisdiction over only one year, 1973, it cannot consider allegations made by the plaintiffs that relate to subsequent years over which this Court does not have jurisdiction. In other words, the Government asserts that the Court must view fiscal year 1973 in isolation and not examine the plaintiffs' "continuing illegality" argument; to do otherwise would "constitute an invasion of the jurisdiction of the United States district courts." Second the Government states that the Claims Court, in *Pacific Coast Medical Enterprises, Inc. v. United States,* 3 Cl. Ct. 140 (1983), determined that interest, pursuant to 42 U.S.C. § 1395oo, for fiscal years ending prior to June 30, 1973, was not to be awarded. Therefore, because tender of the principal amount at issue for fiscal year 1973 was made by the Government, the case is now moot.

A case becomes moot when there is no reasonable expectation "that the alleged violation will recur, * * * and * * * interim

relief or events have completely and irrevocably eradicated the effects of the alleged violation." *County of Los Angeles v. Davis,* 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979) (citations omitted). The "[m]ere voluntary cessation of allegedly illegal conduct does not moot a case * * *." *United States v. Concentrated Phosphate Export Ass'n,* 393 U.S. 199, 203, 89 S.Ct. 361, 364, 21 L.Ed.2d 344 (1968).

The latter is what has occurred in the instant case. The defendant voluntarily tendered an offer of the principal sums in question for fiscal year 1973. This tender by the Government amounted to, in substance, a settlement offer, which plaintiffs were under no obligation to accept. Therefore, because plaintiffs rejected the offer, the case was not rendered moot by defendant's voluntary action. *See Church of Scientology of Hawaii, supra.* The burden of proving mootness is heavy; one that defendant has not met.

### B. Recovery of Principal

In *AMI–Chanco, Inc. v. United States,* 217 Ct.Cl. 76, 576 F.2d 320 (1978), the Court of Claims determined that stock maintenance costs, such as those incurred by NME and the plaintiff hospitals, are reimbursable as allowable costs under Part A of the Medicare Program. In so holding, the *AMI-Chanco* court also concluded that sections 2134.9 and 2150.23 of the Provider Reimbursement Manual (HIM–15), the same provisions relied upon by the intermediary hearing officer and the Secretary in the case at bar, were "arbitrary, capricious and not in accordance with law, and therefore * * * there was no rational basis for the disallowance of the claimed costs." *AMI–Chanco, supra,* 217 Ct.Cl. at 80, 576 F.2d at 322.

That the cost year at issue in this case differs from those at issue in *AMI–Chanco,* is of no consequence. All ended prior to June 30, 1973, and were unaffected by the statutory changes that occurred in 1974.[4]

---

4. Section 243(a) of Pub.L. No. 92–603 provides that jurisdiction to review final decisions of the

Provider Reimbursement Review Board or any reversal, affirmance, or modification by the Sec-

Therefore, because the factual situation present in the case at bar is virtually indistinguishable from that presented in *AMI–Chanco*, this Court is bound by the precedent enunciated by the Court of Claims. General Order No. 1, 1 Cl.Ct. Preceding Rule 1 (1982); *South Corp. v. United States*, 690 F.2d 1368 (Fed.Cir.1982). That portion of plaintiffs' motion seeking reimbursement for the principal amount of their fiscal year 1973 stock maintenance costs is therefore allowed. *See Alexander Hospital, Inc. v. United States*, 5 Cl.Ct. 62, 70 (1984). *See also Pacific Coast Medical Enterprises, Inc. v. United States, supra.*

### C. Interest

▮ It is well-settled that "interest cannot be recovered against the United States upon unpaid accounts or claims in the absence of an express provision to the contrary in a relevant statute or contract." *United States v. Thayer-West Point Hotel Co.*, 329 U.S. 585, 588, 67 S.Ct. 398, 399, 91 L.Ed. 521 (1947); *Komatsu Mfg. Co. v. United States*, 132 Ct.Cl. 314, 315, 131 F.Supp. 949, 950 (1955). Thus, plaintiffs must point to an "explicit waiver of sovereign immunity" in the form of a specific statute or an express contractual provision. *Fidelity Constr. Co. v. United States*, 700 F.2d 1379, 1383 (Fed.Cir.1983). *See also* 28 U.S.C. § 2516 (1982).

Plaintiffs seek recovery of interest pursuant to 42 U.S.C. § 1395g(d) (1982) as implemented by 42 C.F.R. § 405.376.

Section 1395g(d) of Title 42 provides:
Whenever a *final determination* is made that the amount of payment made under this part to a provider of services was in excess of or less than the amount of payment that is due, and payment of such excess or deficit is not made (or effected by offset) within 30 days of the date of the determination, interest shall accrue on the balance of such excess or

deficit not paid or offset (to the extent that the balance is owed by or owing to the provider) at a rate determined in accordance with the regulations of the Secretary of the Treasury applicable to charges for late payments. [Emphasis supplied.][5]

A final determination occurs when both a Notice of Program Reimbursement (NPR) and a written demand for payment or a written determination of an underpayment by the fiscal intermediary are issued. 42 C.F.R. § 405.376(c)(1)(i).

In this instance, an NPR was issued in September 1983. Plaintiffs contend that the determination became final on March 9, 1984, when they filed a request for an administrative appeal. They argue that their request constitutes a "written demand for payment" as contemplated by the regulation. This Court does not agree.

Based on the construction of the language used in the regulation, it is clear that the "written demand for payment" language refers to situations where a written demand is made by the Health Care Financing Administration (HFCA) for the return of an overpayment erroneously made to the provider. It does not refer to a provider's demand for reimbursement for an alleged underpayment.

In an underpayment situation, the determination becomes final when HFCA issues a written determination that such an underpayment has occurred. In this case, a written determination was not issued until May 29, 1986, the date the reimbursement checks were mailed. Therefore, if plaintiffs are entitled to interest pursuant to 42 U.S.C. § 1395g(d), it accrues from May 29, 1986; the date the determination became final. 42 C.F.R. § 405.376(b)(2).

Subsection (h)(1) of the regulation provides that the provisions of 42 C.F.R. § 405.376 becomes applicable once a final determination is made. The provisions do

---

retary, for accounting periods ending on or after June 30, 1973, rests with the district court for the federal district in which the provider is located or in the District Court for the District of Columbia. 42 U.S.C. § 1395oo (1976) note.

**5.** This provision applies to final determinations made on or after September 3, 1982. 42 U.S.C. § 1395g(d) note.

not apply, however, during the time period in which judicial review is sought. 42 C.F.R. § 405.376(h)(1). Plaintiffs filed suit in this case on December 17, 1985,[6] approximately five months prior to the issuance of a final determination. Therefore, because the judicial review process began before the determination became final, plaintiffs are not entitled to interest pursuant to 42 U.S.C. § 1395g(d).[7]

## CONCLUSION

For the reasons discussed herein, plaintiffs' motion for summary judgment is granted in part as it relates to the reimbursement of the principal amount in issue. Defendant's motion for summary judgment also is granted in part as it relates to the award of interest. The remainder of both motions is denied, and judgment shall be entered for the plaintiffs in the total amount of $12,400.00.

Costs are awarded to the plaintiffs, pursuant to RUSCC 54(d).

John C. Rehling, pro se.

Joseph T. Casey, Jr., Washington, D.C., with whom was Acting Asst. Atty. Gen. Richard K. Willard, for defendant.

6. Plaintiffs originally filed suit in this Court on July 13, 1984. The suit was dismissed without prejudice on September 11, 1985 due to plaintiffs' failure to exhaust their administrative remedies.

7. Nor are plaintiffs entitled to recover interest pursuant to 42 U.S.C. § 1395oo(f)(2) (1976). This provision expressly permits the Court to

award interest on awards for cost report years ending on or after June 30, 1973. By implication, therefore, interest on awards for years ending prior to June 30, 1973 is not permitted. For a detailed analysis of this issue, see *Pacific Coast Medical Enterprises, Inc. v. United States,* 3 Cl.Ct. 140 (1983).